**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ANTHONY P. MARIANO,** | : | |
| | : | |
| **Plaintiff** | | **CIVIL ACTION NO. 3:13-0097** |
| | : | |
| **v.** | | |
| | : | **(JUDGE MANNION)** |
| **BOROUGH OF DICKSON CITY,** | | |
| **ANTHONY ZALESKI, *et al*.** | : | |
| | | |
| **Defendants** | : | |

## M E M O R A N D U M

Plaintiff Anthony Mariano was a part-time police officer in the Borough of Dickson City. Believing that he had rights under the collective bargaining agreement between the police department and the borough, he began to look into the agreement. Around the same time, he also wrote a letter to the chief of police expressing that he felt singled-out and unfairly treated by the chief. Soon thereafter, plaintiff was removed from the police department work schedule. The police department chief and the borough claim that plaintiff was removed from the schedule for problems with his work performance, problems which plaintiff alleges are either "trumped up" and/or are violations of rules that other police officers routinely transgressed without punishment and that were not enforced with regularity. Plaintiff alleges that he was removed from the schedule for seeking to take advantage of his rights under the collective bargaining agreement. Plaintiff further alleges that he was removed from the schedule without the procedure he was due, and that his reputation was

harmed in the community as a result of the wrongful employment action. In light of the dispute, plaintiff sued the borough, its chief of police, its mayor, and its council members.

## I.    BACKGROUND[1]

Plaintiff was hired by the Dickson City Police Department in 2004 as a 32 hour a week part-time patrolman, but alleges that he routinely worked in excess of 32 hours a week. Years later, in 2009, defendant William Bilinski III was appointed as Police Chief by the borough. After Bilinski became Chief, plaintiff did not work in excess of 32 hours as often. (Doc. 34-1, at 24). Plaintiff, because he had worked many hours, inquired into whether he could be considered a full-time officer and whether he had rights under the Collective Bargaining Agreement ("CBA") in January 2012. Soon after, plaintiff says he was informed by another officer, Christopher Tully, that Chief Bilinski was unhappy because a part-time officer was asking for information about the CBA. Plaintiff believed that part-time officer to be him, while Chief Bilinski testified that he did not know that Officer Mariano was requesting information about the contract, but that he was aware that Katie Fallon, another part-time Officer, had been looking into the contract. (Doc. 34-6, at 15). Officer Tully,

---

[1]Facts are taken from defendant's statement of material facts, (Doc. 34), and plaintiff's statement of material facts, (Doc. 37), unless otherwise noted. Any disputes about the facts are noted.

who is not a defendant in this matter, denies telling plaintiff that the chief was unhappy about part-timers asking questions about the CBA. (Doc. 34-8, at 9).

The next month, plaintiff wrote a letter to Chief Bilinski indicating that he felt he was being singled out inappropriately and harassed by the chief. The chief did not respond to this letter. Then, on April 1, 2012, Chief Bilinski asked plaintiff to come in and meet with him. The events of the April 1 meeting are disputed. Chief Bilinski states that he fully discussed with plaintiff the reasons that he was being removed from the schedule. Bilinski further states that at the meeting, plaintiff explained that he was having problems at home and had been sick, and that the chief removed him from the schedule because his problems at home were adversely affecting his job performance, giving him a letter detailing the reasons he was taken off of the schedule. (Doc. 34-6, at 12-13).

Plaintiff's account is that he asked why the meeting was taking place, but Chief Bilinski would not tell him. Plaintiff then asked to have Officer Phil Davitt, the union representative for the police officers, at the meeting with him, because he feared that it was some type of disciplinary action. That request was denied. Plaintiff states that Chief Bilinski began to ask him about an incident regarding plaintiff's logging of evidence, which the Chief believed had been done incorrectly. Plaintiff explained the cause of the incident, stating that he had been called away on another matter per the Chief's orders. The Chief then began to question him about violating a direct order, which plaintiff

3

denied. Chief Bilinski then began to question plaintiff about a third incident, at which time plaintiff became upset and said he no longer wanted to discuss the issues because he was becoming "stressed out" and felt that this was a continuation of the Chief "targeting" him since the beginning of Chief Bilinski's tenure. At that point, Chief Bilinski told plaintiff that he was removed from the schedule, handed plaintiff a letter detailing the reasons for the action, and told plaintiff to leave. (Doc. 34-1, at 6-7). The letter from Chief Bilinski focuses on four incidents: the improper evidence logging, errors on an incident log report provided by the Lackawanna County Communication Center and plaintiff having dinner at a local establishment during some calls, plaintiff failing to file charges against a perpetrator of retail theft, and the improper handling of paperwork for another retail theft arrest. (Doc. 34-2).

Defendant Mayor Zaleski testified that the Chief of Police reports to him and that as mayor, he is ultimately in charge of the police department. Mayor Zaleski stated that Chief Bilinski had provided the police officers in the department with a binder of policies and procedures. He noted that Chief Bilinski spoke with him before making decisions to reprimand part-time officers in any way. He was not sure if it was a written policy in Chief Bilinski's manual that required the Chief to consult with him before disciplining officers, but believed that it was a verbal agreement he had with the Chief. (Doc. 41-1, at 10-11). Mayor Zaleski reviewed the letter Chief Bilinski wrote to Officer Mariano and discussed it with the chief before the April 1 meeting between

4

plaintiff and Bilinski. (Id., at 17). He agreed with the chief's decision to remove plaintiff from the schedule. (Id., at 19). Plaintiff alleges that he spoke to the mayor within a day or two of receiving the letter, but the mayor denies this. (Doc. 41-1, at 27).

A few days after his meeting with Chief Bilinski, Officer Mariano wrote a letter in response to the charges detailed in the April 1 letter. Plaintiff's letter denies that he defied a direct order, and argues that he was reprimanded and removed from the schedule for minor infractions which were committed routinely by many of the other officers in the police department. He argued that enforcement of these infractions was being directed at him, but not at other officers who violated them. The letter also lists some problems that plaintiff had with Chief Bilinski and asked that he be placed back on the schedule immediately. The letter was copied to Mayor Zaleski and Borough Council members. (Doc. 34-3).

Plaintiff also prepared four grievances. He gave them to the union representative, Officer Davitt. Officer Davitt testified that he presented the grievances to the other members of the bargaining unit and recommended that they be submitted to the Chief of Police as the first step of the grievance process. However, only one of the other members of the unit wanted to even discuss or consider the grievances, and so the group did not agree to submit them. Officer Davitt verbally informed plaintiff of this, and suggested that he file them with the chief without the bargaining unit representation. (Doc. 34-

10, at 3). Plaintiff then attempted to give the grievances to Chief Bilinski, who refused to accept them because he had not received notice from the bargaining unit that there would be grievances, and because he did not believe that part-time officers had the right to grieve issues like the ones plaintiff was raising. (Doc. 34-6, at 16). Chief Bilinski did not look at or review the grievances before refusing them, and did not discuss with plaintiff whether he had attempted to submit them to the bargaining unit. Officer Davitt did testify that part-time officers were members of the bargaining unit in the borough. (Doc. 34-10, at 3).

Plaintiff next submitted his grievances to the Borough Council. He also attended several borough council meetings to ask for an opportunity to speak with them and be put back on the schedule. The borough council President, defendant Barbara Mecca, stated that the council does not have much of a role in overseeing the police department. However, the council is in charge of approving hires and officially firing officers. (Doc. 34-11, at 10-11, 18).

President Mecca does not recall receiving or reviewing Officer Mariano's grievances, but testified that it was her understanding that the grievance procedure had not been followed. (Id., at 21-22). She stated that if she had received them, she would have forwarded them to the borough's labor attorney. (Id., at 24-25). She testified that the borough did not investigate any of the charges that led to plaintiff's removal from the schedule, and that the borough council had not taken any official action to terminate plaintiff's

employment as a police officer. The council also did not take action to adopt Chief Bilinski's policy manual. (Id., at 27-29). Further, council did not give Chief Bilinski approval to remove plaintiff from the schedule. (Id., at  29).

Defendants previously filed a motion to dismiss, which was granted in part and denied in part. Plaintiff was allowed leave to amend his complaint as to certain claims, but did not file an amended complaint. Following the decision on the motion to dismiss, (Docs. 25, 26), the claims remaining are 42 U.S.C. §1983 claims for violation of the 14th Amendment due process clause for terminating plaintiff's employment against Chief Bilinski, the borough, Mayor Zaleski, and all of the members of the Dickson City Council, for violation of the due process clause for injuring plaintiff's reputation as to Chief Bilinski and the borough, and a false light claim against Chief Bilinski.


## II.   LEGAL STANDARDS

### Summary Judgment Standard

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Turner v. Schering-Plough Corp., 901 F.2d 335, 340 (3d Cir. 1990). A factual dispute is genuine if a reasonable jury could find for the non-moving party, and is

material if it will affect the outcome of the trial under governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Aetna Casualty & Sur. Co. v. Ericksen, 903 F. Supp. 836, 838 (M.D. Pa. 1995). At the summary judgment stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249 ; *see also* Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (a court may not weigh the evidence or make credibility determinations). Rather, the court must consider all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007).

To prevail on summary judgment, the moving party must affirmatively identify those portions of the record which demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323-24. The moving party can discharge the burden by showing that "on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." In re Bressman, 327 F.3d 229, 238 (3d Cir. 2003); *see also* Celotex, 477 U.S. at 325.  If the moving party meets this initial burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts," but must show sufficient evidence to support a jury verdict in its favor. Boyle v. County of Allegheny, 139 F.3d 386, 393 (3d Cir. 1998) (*quoting* Matsushita Elec. Indus. Co. v.

Zenith Radio, 475 U.S. 574, 586 (1986)). However, if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to [the non-movant's] case, and on which [the non-movant] will bear the burden of proof at trial," Rule 56 mandates the entry of summary judgment because such a failure "necessarily renders all other facts immaterial." Celotex Corp., 477 U.S. at 322-23; Jakimas v. Hoffman La Roche, Inc., 485 F.3d 770, 777 (3d Cir. 2007).

§1983 Standard

Plaintiff brings his constitutional claim pursuant to 42 U.S.C. §1983. Section 1983 does not itself bestow substantive rights, but instead creates a remedy for violation of a person's constitutional rights. Gonzaga Univ. v. Does, 536 U.S. 273 (2002). The statute provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . . 42 U.S.C. §1983.

To establish a claim under §1983, a person must prove that someone deprived him of a constitutional right while acting under the color of state law. Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996).

Liability under §1983 is personal in nature and can only follow personal

involvement in the alleged wrongful conduct shown through specific allegations of personal direction or actual knowledge and acquiescence. See Robinson v. City of Pittsburgh, 120 F.3d 1286 (3d Cir. 1997) (citing Rhode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988)); see also Kokinda v. Breiner, 557 F. Supp. 2d 581, 587 (M.D. Pa. 2008). A municipality is a "person" for purposes of §1983. See Bd. of the County Comm'rs of Bryan County, Oklahoma v. Brown, 520 U.S. 397, 403 (1997) (citing Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 689 (1978)). But §1983 does not allow municipal liability under a theory of respondeat superior. Id. A municipality is not liable under §1983 merely for employing someone who violates a person's civil rights; rather, a municipality that does not directly violate a person's civil rights is liable only where it has in place a policy or custom that led to the violation. Id. The plaintiff bears the burden of identifying the policy or custom. Id. This rule ensures that a municipality will only be liable where it is the "moving force" behind the plaintiff's injury. Id.

## III.    DISCUSSION

Defendants have moved for summary judgment on the claims remaining against them. (Doc. 32). Defendants move on the grounds that plaintiff failed to exhaust his remedies under the CBA, that the defendants have immunity, and that there are no genuine issues of material fact remaining.

1.   Exhaustion

There is no general exhaustion requirement for a claim under 42 U.S.C.

§1983. *See* Patsy v. Board of Regents of State of Florida, 457 U.S. 496.

However, where a plaintiff, as here, brings a claim for violation of the right to

procedural due process, a plaintiff "must have taken advantage of the

processes that were available, unless those processes were patently

inadequate." Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir. 2000). Where there

is an available grievance process, a plaintiff alleging a procedural due process

violation must pursue that process before seeking redress in the courts,

unless the grievance process is blocked or there is evidence that it is a sham.

Garzella v. Borough of Dunmore, 280 Fed. Appx. 169, 173 (3d Cir. 2008). The

failure to exhaust remedies under a CBA is an affirmative defense. See

Wright v. Universal Maritime Services Corp., 525 U.S. 70, 75 (1998)(referring

to failure to exhaust remedies under a CBA as an affirmative defense).

Defendants argue that the CBA covers only full-time officers, and

plaintiff is not covered by the CBA because he was a part-time officer. (Doc.

39, ¶ 126). However, defendants also argue that plaintiff has failed to exhaust

his remedies under the CBA by failing to follow its grievance procedures.

Specifically, they argue that plaintiff did not submit his grievances to

arbitration following their refusal and/or denial by the union, chief, and other

borough officials. Defendants have failed to satisfy their burden of showing

that plaintiff did not exhaust his remedies. This is because defendants have

11

not submitted a copy of the CBA that was in effect at the time plaintiff had grievances and attempted to use the grievance procedure, nor have they adequately and fully described the grievance procedures as they exist in the CBA. The CBA in the record, (Doc. 34-5), was in effect from 2007-2009. The CBA in effect in April 2012, the time relevant to this case, has not been made available to the court.

Thus, even assuming that the CBA applies to plaintiff and he was bound by its grievance procedures, the court cannot say that plaintiff failed to follow those procedures without knowing what they are. While several of the deposed witnesses in this case testified generally about what the proper "steps" of the grievance procedure were, none of that testimony addressed the requirement that arbitration be pursued. Moreover, even if it were true that plaintiff failed to utilize the post-termination processes afforded by the CBA, he would still be entitled to challenge his pre-termination process. Savokinas v. Pittston Twp., 2006 WL 2382256 (M.D. Pa. Aug. 16, 2006)(*citing* Alvin, 227 F.3d, at 120)). Accordingly, the court cannot dismiss plaintiff's claims on the ground that plaintiff did not pursue arbitration.

2.    State Law Immunity

Defendants next argue that the doctrine of immunity protects the defendants from suit. They rely on the Pennsylvania Political Subdivision Tort Claims Act ("PPSTCA"), 42 Pa.C.S. §8541. Most of the immunity issues in

12

this case were already addressed by this court at the motion to dismiss stage, and indeed, most of the state law claims were dismissed against the individual defendants and the borough on immunity grounds. (Doc. 25, at 15-20). The defendants now seek to apply that immunity to the remaining claims. But as the court already addressed at that earlier stage in this litigation, it is well-established that immunity under the PPSTCA applies only to state law tort claims, and not federal civil rights suits under §1983. Burkhart v. Knepper, 310 F.Supp.2d 734, 743 (W.D.Pa. 2004)(*citing* Wade v. City of Pittsburgh, 765 F.2d 405, 407 (3d Cir. 1985)).  The court thus repeats its earlier decision that immunity under the PPSTCA cannot apply to the due process clause claims that remain in this case.

Defendants raise again the issue of high public official immunity as to Chief Bilinski. High public official immunity predates the PPSTCA and is not abrogated by it. Lindner v. Mollan, 677 A.2d 1194, 1196 (Pa. 1996). "Pennsylvania exempts a high public official from all civil suits for damages arising out of false defamatory statements and even from statements or actions motivated by malice, provided the statements are made or the actions are taken in the course of the official's duties or powers." Smith v. Borough of Dunmore, 633 F.3d 176, 181 (3d Cir. 2011)(*citing* Lindner, 677 A.2d, at 1195)). High public official immunity applies to false light claims. *See* Poteat v. Harrisburg Sch. Dist., 33 F.Supp.2d 384, 395 (M.D.Pa. 1999); *see also* McErlean v. Borough of Darby, 157 F.Supp.2d 441, at 446 (E.D.Pa. 2001).

Whether a public official is entitled to the immunity depends on "the nature of his duties, the importance of his office, and particularly whether or not he has policy-making functions." Reinhold v. County of York, 2012 WL 4104793, at *24 (August 31, 2012 M.D.Pa.)(*citing* Montgomery v. City of Phila., 140 A.2d 100, 105 (Pa. 1958)). If an official is entitled to the immunity, the court considers the formality of the forum in which the alleged acts occurred, and the "relationship of the legitimate subject of governmental concern to the person seeking damages" to determine whether they were within the scope of defendants' official duties. Reinhold, 2012 WL 410793, at *24, (*citing* Hall v. Kiger, 795 A.2d 497, 501 (Pa. Commonw. Ct. 2002)).

The court withheld its determination of whether Chief Bilinski was a high public official at the motion to dismiss stage, concluding that it did not have sufficient information to determine if Chief Bilinski had the power to make borough policy. The record before the court at the summary judgment stage does not reveal that Chief Bilinski had the policy-making authority to make him a high public official for immunity purposes. Chief Bilinski consults with the mayor before disciplining officers and is not independently responsible for hiring or firing officers. While the record indicates that he has responsibility for the internal policies and procedures that come with overseeing the police department, there is no indication that he is more broadly responsible for making borough policy. Thus, Chief Bilinski is not entitled to high public official immunity.

14

Finally, as to immunity issues, and unlike at the motion to dismiss stage, defendants here do briefly and vaguely argue that they are entitled to qualified immunity from the §1983 claim, raising the defense for the first time in their reply brief. (Doc. 40, at 11). The Supreme Court has said that the application of qualified immunity depends on "(1) whether the official's conduct violated a constitutional or federal right; and (2) whether the right at issue was clearly established." Sharp v. Johnson, 669 F.3d 144, 159 (3d Cir. 2012). "A right is clearly established for qualified immunity purposes where its contours are sufficiently clear that a reasonable official would understand that what he is doing violates that right." Id. This prong requires an inquiry into whether there was "sufficient precedent at the time of the action, factually similar to the plaintiff's allegations, to put [the] defendant on notice that his or her conduct is constitutionally prohibited." Wilson v. Zielke, 382 Fed. Appx. 151, 152 (3d Cir. 2010). Defendants do little to support their argument for qualified immunity. They do not indicate what exactly they believe is not "clearly established" in law such that qualified immunity is appropriate, but simply assert that the doctrine applies. Without more substantiation, the court cannot agree with defendants. They have failed to demonstrate, or even argue with any particularity, that the due process owed to plaintiff in this case are not clearly established. The court thus does not find that they are entitled to qualified immunity.

15

3.   Due Process - Plaintiff's Employment

Plaintiff has a remaining §1983 claim against all defendants for violation of the due process clause of the 14th Amendment in the termination of his employment.

"[A] procedural due process analysis involves a two step inquiry: (1) does the complaining party have a protected liberty or property interest and, if so, (2) does the available process comport with all constitutional requirements." Bowen v. Ryan, 2006 WL 3437287 (M.D. Pa. Nov. 29, 2006) aff'd, 248 Fed. Appx. 302 (3d Cir. 2007); *see also* Shoats v. Horn, 213 F.3d 140, 143 (3d Cir. 2000). To have a property interest in a job, "a person must have more than a unilateral expectation of continued employment; rather, she must have a legitimate entitlement to such continued employment." Hill, 455 F.3d at 234 (*citing* Elmore v. Cleary, 399 F.3d 279, 282 (3d Cir. 2005)). Whether a legitimate entitlement exists is a question of state law. Hill, 455 F.3d at 234.

The court must first determine whether plaintiff has a protected interest in continued employment. The Third Circuit has determined that borough police have a protected interest in their employment conferred by a Pennsylvania state statute limiting the reasons for which they can be removed or suspended to specific enumerated causes. Dee v. Borough of Dunmore, 549 F.3d 225, 230-31 (3d Cir. 2008)(relying on 53 Pa.Stat. §46190, which was recodified as 8 Pa.C.S. §1190 on June 17, 2014). While defendants

argue that plaintiff's part-time status means that he does not have a protected interest, the terms of §1190 protect any "person employed in the police or fire force of any borough." This language does not exclude part-time officers. The court finds that plaintiff has a protected property interest in his employment.

  Having determined that plaintiff has a protected property interest in his employment, the court next looks to see whether he was afforded constitutional process. Defendants rely on the grievance terms in the CBA to show that plaintiff was afforded all of the process that he was due and that he has violated the terms of the CBA by bringing this lawsuit. But as noted above, the procedures of the CBA are not known to the court.

Defendants also argue that plaintiff was not terminated, and does not even consider himself to have been terminated, and therefore that he was not owed due process. But this argument is not persuasive. First, §1190 provides process not just for terminations, but also for suspensions without pay or reductions in rank. Being removed from the schedule, and thus not receiving pay for shifts worked, at least amounts to a suspension. Second, taking the facts in the light most favorable to plaintiff, there is no indication that plaintiff was informed that the removal from the schedule was temporary. Moreover, plaintiff was never placed back on the schedule. While Chief Bilinski testified that there was nothing preventing him from putting plaintiff back on the schedule, he never reinstated plaintiff, and plaintiff took a new job. A municipality cannot avoid liability by removing an employee from a work

schedule permanently without terminating them officially, and then arguing that the employee was never technically fired. It is clear that plaintiff was effectively terminated from his position in the Dickson City Police Department.

Even if the CBA does provide a post-termination process, "under Pennsylvania law...a brief and informal pre-termination or pre-suspension hearing is necessary." Schmidt v. Creedon, 639 F.3d 587, 590 (3d Cir. 2011). All that is required at the pre-termination stage is "notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." Id.(*citing* Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 545 (1985)). An employee is not generally entitled to have an impartial decision-maker at such a hearing. Id.(*citing* McDaniels v. Flick, 59 F.3d 446, 460 (3d Cir. 1995)).

Here, the facts of the pre-termination meeting with Chief Bilinski are in dispute, which alone is enough to preclude summary judgment, as they are material to the question of what type of process was afforded to plaintiff. Moreover, drawing all inferences in favor of plaintiff, it cannot be said definitively that plaintiff was afforded an appropriate pre-termination hearing. It is not clear that plaintiff had an opportunity to respond to the allegations against him at the April 1 meeting, or that he was given sufficient notice that the meeting was a disciplinary one until he was handed the letter which informed him he was being taken off of the schedule. Chief Bilinski had the letter removing plaintiff from the schedule prepared before plaintiff had an

18

opportunity to answer the charges against him, and Mayor Zaleski had approved the removal of plaintiff from the schedule before the meeting, neither of which suggests, in the view most favorable to plaintiff, that he had a legitimate opportunity to explain his side of the story. Thus, there is at least a question of material fact as to whether plaintiff was afforded appropriate pre-termination process.

Taking the evidence of record in the light most favorable to plaintiff, there are also legitimate questions as to whether plaintiff's post-termination process was adequate. Post-termination hearings are to be "more comprehensive" than pre-termination hearings. Koltonuk v. Borough of Laureldale, 443 F.Supp. 2d 685, 692 (E.D. Pa. 2006)(*citing* Gilbert v. Homar, 520 U.S. 924, 929 (1997)). But the post-termination process afforded to plaintiff was not more comprehensive than the minimal pre-termination standards.

Chief Bilinski gave plaintiff a letter stating that he, the "borough council members and Mayor" had reviewed plaintiff's letter in response to the April 1 letter and had decided that the April 1 communication to plaintiff had been appropriate. (Doc. 34-11, at 44). It is undisputed that plaintiff's grievances were not considered by Chief Bilinski. Defendant Mecca did not remember seeing the grievances, and does not remember taking any action on them other than presuming that she sent them to the borough attorney handling labor issues. Plaintiff testified that he went to council meetings on several

19

occasions and asked to be heard and placed back on the schedule, but council was not responsive to these requests. Nobody investigated the charges against him. Plaintiff has thus made a sufficient showing that whatever opportunity he had for post-deprivation process was blocked, as he was effectively ignored at every attempt to be heard. None of this amounts to even the minimal constitutionally acceptable requirements for post-termination process, because plaintiff was not given a meaningful opportunity to respond and be heard by any impartial decision makers. *See* Heneghan v. Northampton Comm. Coll., 801 F.Supp. 2d 347, 366 (E.D. Pa. 2011)(*citing* Schweiker v. McClure, 456 U.S. 188, 195(1982)).

The defendants have argued that the grievance provisions of the CBA provide sufficient post-deprivation process to pass constitutional muster. The CBA presumably provides some procedures to follow in situations where an employee has been terminated, suspended, or disciplined, but whether those are sufficient to satisfy due process, and whether they were followed in this case, are unknown to the court. Accordingly, the court cannot grant summary judgment on the ground that plaintiff was afforded sufficient due process, or that sufficient process was available and he failed to take advantage of it. Defendants' motion for summary judgment is thus **DENIED** as to the due process claim for plaintiff's employment.

4.    Due Process - Plaintiff's Reputation

Plaintiff also has a remaining claim against Chief Bilinsky for violating the Due Process Clause by injuring plaintiff's reputation. "Reputation alone is not an interest protected by the Due Process Clause." Dee v. Borough of Dunmore, 549 F.3d 225, 233 (3d Cir. 2008). Rather, in order to have a liberty interest in his reputation, "a plaintiff must show a stigma to his reputation plus deprivation of some additional right or interest." Hill, 455 F.3d at 236. This is known as the "stigma-plus" test. Id. In the public employment context, the stigma-plus test means that an employer "creates and disseminates a false and defamatory impression about the employee in connection with his termination." Id. (*citing* Codd v. Velger, 429 U.S. 624, 628 (1977)). The dissemination of a false impression is the "stigma," while the termination from employment is the "plus." Hill, 455 F.3d, at 236. The proper remedy for this type of constitutional violation is a "name-clearing" hearing. Id.

Plaintiff has not shown that there is a question of material fact to justify allowing this claim to survive summary judgment. He has simply not supported his allegations of Chief Bilinski speaking disparagingly and falsely about him to members of the community regarding the circumstances surrounding his termination with any evidence. Plaintiff's own testimony did not identify any particular instance in which Chief Bilinski disparaged plaintiff, any person to whom this disparaging comments were made, or what the comments were. While he alleges that statements were made to loss prevention officers, there

21

is no support for this claim beyond that allegation. He testified to having a general feeling that members of the public do not view him as trustworthy and reliable as an employee as they once did. However, these generalizations are insufficient to sustain a claim for damage to plaintiff's reputation under the due process clause, and defendants' motion for summary judgment is **GRANTED** as to this claim.

5.  False Light

Plaintiff's last remaining claim is for false light against Chief Bilinski. A claim for false light requires that the false light in which the other was placed would be highly offensive to a reasonable person, and the actor knew or acted with disregard as to the falsity of the publicized matter. Krajewski v. Gusoff, 53 A.3d 793, 805-06 (Pa. Super. 2012).

The evidence of record fails to support this claim. Plaintiff's allegations are of insufficient particularity to support the claim as to Chief Bilinski. There is no mention of the specific content of the statements or their recipients. Nor is there any specific evidence to shed more light on these allegations. Without more, the claim cannot survive the motion for summary judgment, as there is no indication that the statements were highly offensive, or made with knowledge of their falsity. Defendant's motion is thus **GRANTED** as to the false light claim against Chief Bilinski.

## IV.    CONCLUSION

In light of the above, **IT IS HEREBY ORDERED THAT** defendants' motion for summary judgment, (Doc. 32), is **GRANTED IN PART** and **DENIED IN PART**. The motion for summary judgment is **GRANTED** as to plaintiff's claims for injury to his reputation under the 14th Amendment Due Process Clause and for false light against Chief William Bilinski III. The motion is **DENIED** as to the claim for violation of the 14th Amendment Due Process Clause in terminating plaintiff against all defendants. A separate order shall issue.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Date: August 22, 2014**

O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2013 MEMORANDA\13-0097-02.wpd