## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANTHONY P. MARIANO, | : |
| | : |
| Plaintiff | CIVIL ACTION NO. 3:13-0097 |
| | : |
| v. | |
| | :      (JUDGE MANNION) |
| BOROUGH OF DICKSON CITY, | |
| ANTHONY ZALESKI, *et al.*, | : |
| Defendants | : |

## **M E M O R A N D U M**

Defendants filed the instant motion for reconsideration of this court's granting in part and denying in part, (Doc. 43), its motion for summary judgment on plaintiff's claims: a false light claim, a due process claim for injury to plaintiff's reputation, and a due process claim for failing to afford plaintiff appropriate process when he was terminated from employment. The court granted summary judgment as to the false light and reputation claims, but allowed the due process claim to go forward. Defendants now contest that ruling. (Doc. 44).

**I.      BACKGROUND**

This suit centers on the events surrounding the removal of plaintiff Anthony Mariano from the police department of the Borough of Dickson City, the particular facts of which are more fully detailed in the court's memorandum regarding defendants' summary judgment motion. (Doc. 42, at

2-7). Plaintiff was a part-time police officer in the Borough of Dickson City. Believing that he had rights under the collective bargaining agreement ("CBA") between the police department and the borough, he began to look into the agreement. Around the same time, he also wrote a letter to the chief of police expressing that he felt singled-out and unfairly treated by the chief. Soon thereafter, plaintiff was removed from the police department work schedule. The police department chief and the borough claim that plaintiff was removed from the schedule for problems with his work performance. Plaintiff disputes that, alleging that the charges are "trumped up," and that any issues were violations of rules that other police officers routinely transgressed without punishment and that were not enforced with regularity. Plaintiff alleges that he was removed from the schedule for seeking to take advantage of his rights under the CBA. Plaintiff further alleges that he was removed from the schedule without the procedure he was due.

After he was removed from the schedule at a meeting on April 1, 2012, Officer Mariano wrote a letter in response to the charges which caused him to be removed from the schedule. Plaintiff's letter denies that he defied a direct order, and argues that he was reprimanded and removed from the schedule for minor infractions which were committed routinely by many of the other officers in the police department. He argued that enforcement of these infractions was being directed at him, but not at other officers who violated them. The letter also lists some problems that plaintiff had with Chief Bilinski

2

and asked that he be placed back on the schedule immediately. The letter was copied to Mayor Zaleski and Borough Council members. (Doc. 34-3).

Plaintiff also prepared four grievances. He gave them to the union representative, Officer Davitt. Officer Davitt testified that he presented the grievances to the other members of the bargaining unit and recommended that they be submitted to the Chief of Police as the first step of the grievance process. However, only one of the other members of the unit wanted to even discuss or consider the grievances, and so the group did not agree to submit them. Officer Davitt verbally informed plaintiff of this, and suggested that he file them with the chief without the bargaining unit representation. (Doc. 34-10, at 3). Plaintiff then attempted to give the grievances to Chief Bilinski, who refused to accept them because he had not received notice from the bargaining unit that there would be grievances, and because he did not believe that part-time officers had the right to grieve issues like the ones plaintiff was raising. (Doc. 34-6, at 16). Chief Bilinski did not look at or review the grievances before refusing them, and did not discuss with plaintiff whether he had attempted to submit them to the bargaining unit. Officer Davitt did testify that part-time officers were members of the bargaining unit in the borough. (Doc. 34-10, at 3).

Plaintiff next submitted his grievances to the Borough Council. He also attended several borough council meetings to ask for an opportunity to speak with them and be put back on the schedule. Council President Mecca does

not recall receiving or reviewing Officer Mariano's grievances. (Doc. 34-11, at 10-11, 18, 21-22).

Some of plaintiff's claims were dismissed at the motion to dismiss stage of this litigation. (Doc. 26). In the summary judgment ruling that defendants ask us to reconsider, the court dismissed plaintiff's claims for a violation of due process causing injury to his reputation, and for false light invasion of privacy. (Doc. 43). The court allowed plaintiff's claim for a violation of due process in terminating plaintiff to go forward. The court allowed the claim to go forward because, while defendants argued that plaintiff had failed to exhaust his remedies under the CBA, they had failed to provide the court a copy of the CBA in effect at the time of plaintiff's termination, and so the court was unable to make a determination of what the processes afforded by the CBA actually were. Defendants also argue that the court erred in determining that Pennsylvania law grants plaintiff a protected interest in his continued employment as a police officer.

**II.   DISCUSSION**

To succeed on a motion to reconsider, the moving party must demonstrate: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion... or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." Howard Hess Dental Laboratories Inc. v. Dentsply Intern.,

Inc., 602 F.3d 237, 251 (3d Cir. 2010).

Defendants' first ground for arguing for reconsideration is that the court erred in not considering the CBA at the summary judgment stage, which amounts to a clear error which will cause a manifest injustice. The court did not consider the CBA defendants attached to their motion for summary judgment because it was clearly dated as being in effect from 2007-2009. The relevant time period for this case is 2012. Despite defendants' repeated claims that "the Court was in possession of the CBA in effect at the time in question," the court could not have reasonably decided that although the document in its possession was clearly dated as effective for a finite, earlier time frame, it applied just as well to events more than two years after its apparent expiration.

Defendants also argue that because plaintiff made no objection to the CBA in the record, the court should also not have objected to the obvious fact that its date rendered it irrelevant to the questions at hand. Defendants effectively argue that the court must consider patently inapplicable documents unless a party objects to those documents. This suggestion defies logic. Defendants' failure to include the proper documentation to demonstrate that the CBA was in effect in April 2012 was their error, not the court's, and it is an error they have compounded by continuing to blame the court for not considering the CBA as it was originally presented.

However, this is an unusual circumstance. Defendants did provide a

substantial part of a document that does have a controlling effect on the outcome of this litigation at the summary judgment stage, and have since attached further documentation demonstrating that the relevant portions of that document had controlling effect in April of 2012, the time when plaintiff was removed from the schedule. To ignore the fact that the CBA applies, and that plaintiff failed to exhaust his remedies, would be a manifest injustice to both parties, who would spend additional money and time preparing for and beginning a trial, only to find out that the controlling CBA demonstrates that plaintiff failed to exhaust his remedies under it, and that his case must therefore be dismissed. While the court does not condone defendants' laxity in providing the correct CBA, the court would only exacerbate the harm caused by that mistake if it failed to consider the CBA at this stage.

As discussed in the summary judgment memorandum, there is no general exhaustion requirement for a claim under 42 U.S.C. §1983. *See* Patsy v. Board of Regents of State of Florida, 457 U.S. 496. However, where a plaintiff, as here, brings a claim for violation of the right to procedural due process, a plaintiff "must have taken advantage of the processes that were available, unless those processes were patently inadequate." Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir. 2000). Where there is an available grievance process, a plaintiff alleging a procedural due process violation must pursue that process before seeking redress in the courts, unless the grievance process is blocked or there is evidence that it is a sham. Garzella v. Borough

of Dunmore, 280 Fed. Appx. 169, 173 (3d Cir. 2008). The failure to exhaust remedies under a CBA is an affirmative defense. *See* Wright v. Universal Maritime Services Corp., 525 U.S. 70, 75 (1998)(referring to failure to exhaust remedies under a CBA as an affirmative defense).

While the court could not originally consider the grievance procedures in the CBA, it will do so now. The CBA grievance procedure is as follows:

> Step 1: the member, either alone or acc[ompanied] by a representative of the bargaining unit, or the bargaining unit itself, shall present the grievance in writing to the chief of police within 30 days of its occurrence or knowledge of its occurrence. The chief shall report his decision in writing to the member and the bargaining unit representative within 7 days of its presentation.

(Doc. 49-1, at 12). As mentioned above, plaintiff followed step one of the procedure by submitting grievances to the chief of police, who refused to look at or consider them.

> Step 2: In the event that the grievances [are] not settled at Step 1, an appeal must be presented in writing by a member of the bargaining unit representative to the head of the political subdivision within 7 days after the response at Step 1 is due. The head of the political subdivision (President of Council) or his designated representative shall respond in writing to the member and the bargaining unit representative within 7 days after the receipt of the appeal.

(Id.) The record reflects that plaintiff also followed this step of the appeal by submitting grievances to the Borough Council and President Mecca specifically. There is no indication that council responded to the grievances in any way. The CBA lays out a final step in the grievance procedure:

> Step 3: In the event that the grievance has not been satisfactorily

7

>resolved in Step 2, the bargaining unit representative may initiate an appeal by serving upon the head of the political subdivision a notice in writing of his intent to proceed to arbitration within 7 days after the receipt of the Step 2 decision is due.

(Id.).

Here, the record does not demonstrate that plaintiff attempted to appeal from the lack of action from the Council and initiate arbitration. Plaintiff argues that the process was effectively blocked because the chief of police and Council President did not accept and/or reply to his grievances at steps 1 and 2. While it does appear that the borough officials acted improperly in refusing to consider the grievances, this behavior did not actually prevent plaintiff from seeking to proceed to arbitration, the final step of the process. Plaintiff could have informed the Council President that he intended to take the grievances to arbitration, and initiated that process as the grievance procedure outlines. Had the borough officials refused to undergo the arbitration process, or again ignored his grievances, all of his remedies under the CBA would have been exhausted, and he would have been able to initiate the current suit properly. However, as it stands, plaintiff did not attempt to undergo the last step of the CBA's grievance procedure, and as such, he did not exhaust his administrative remedies under the CBA.

Plaintiff argues that even if he has failed to exhaust his CBA remedies, that he was still entitled to a pre-termination hearing, because, as the court stated in its summary judgment memorandum, "even if it were true that

plaintiff failed to utilize the post-termination processes afforded by the CBA, he would still be entitled to challenge his pre-termination process. Savokinas v. Pittston Twp., 2006 WL 2382256 (M.D. Pa. Aug. 16, 2006)(*citing* Alvin, 227 F.3d, at 120))." (Doc. 42, at 12).

That determination by the court was made with a concurrent finding that plaintiff had a state-law conferred property interest in his continued employment. However, for the following reasons, the court's determination that plaintiff had a state-law conferred property interest in his employment in addition to the right conferred on him by the CBA was in error, and so the court's determination that plaintiff would be entitled to pre-termination process is no longer apposite.

"[A] procedural due process analysis involves a two step inquiry: (1) does the complaining party have a protected liberty or property interest and, if so, (2) does the available process comport with all constitutional requirements." Bowen v. Ryan, 2006 WL 3437287 (M.D. Pa. Nov. 29, 2006) aff'd, 248 Fed. Appx. 302 (3d Cir. 2007); see also Shoats v. Horn, 213 F.3d 140, 143 (3d Cir. 2000). To have a property interest in a job, "a person must have more than a unilateral expectation of continued employment; rather, she must have a legitimate entitlement to such continued employment." Hill v. Borough of Kutztown, 455 F.3d 225, 234 (*citing* Elmore v. Cleary, 399 F.3d 279, 282 (3d Cir. 2005)). Whether a legitimate entitlement exists is a question of state law. Hill, 455 F.3d at 234.

9

Defendants' second ground for reconsideration is that the court made an error in law in relying upon the Third Circuit case Dee v. Borough of Dunmore, 549 F.3d 230-31 (2005), which held, relying upon 8 Pa.C.S. §1190, a state statute that limits the reasons for which a "person employed in any police or fire force of any borough" can be removed or suspended, that Pennsylvania law grants borough police officers a property interest in their employment. As defendants point out, this court's reliance on 8 Pa.C.S. §1190 was misplaced, because it did not take into account 8 Pa.C.S. §1170, which defines "police force" as

> A police force organized and operating as prescribed by law, the members of which devote their normal working hours to police duty or duty in connection with the bureau, agencies and services connected with police protection work and who are paid a stated salary or compensation for the work by the borough. As used in this subchapter, the term shall not include any of the following
> ....
>
> (4) Extra police serving from time to time or on an hourly or daily basis.

Defendants argue that the definition excludes part-time officers, and that they are thus not afforded a property interest in their continued employment under Pennsylvania law, and that therefore, *Dee* grants full-time officers, but not part-time officers, a property interest in their employment. Plaintiff contends that he was a regularly scheduled officer and was not an "extra" officer and did not serve merely "from time to time," and so §1170 does not exclude him from being a member of a police force. Relevant case law

supports defendants' interpretation of the statute. *See* Stevens v. Telford Borough, 2014 WL 4056952, at *6 (E.D. Pa. Aug. 14, 2014 (finding that part-time officer had no expectation of continued employment under §1170); *see also* Rosati v. Borough of Hellertown, 1992 WL 396769, at *2-3 (E.D. Pa. Dec. 24, 1992)(interpreting 53 P.S. §46195, which was recodified as 8 Pa.C.S. §1170 on June 17, 2014)(finding that because a part-time officer was paid on an hourly basis, he was not included in the definition of "police force" and was better characterized as "extra police," and thus had no property interest in his continued employment).

There is no dispute that plaintiff was a part-time officer who was paid on an hourly basis, and so Pennsylvania law does not afford him a property interest in his continued employment. Because plaintiff did not exhaust his remedies under the CBA, he is unable to pursue his due process claim under the property interest the CBA afforded him. Further, because he has no state-law conferred property interest, he also can not pursue the claim on those grounds. Thus, the defendants' motion for reconsideration is **GRANTED** and plaintiff's remaining due process claim is **DISMISSED**.

**III.    CONCLUSION**

For the foregoing reasons, defendants' motion for reconsideration, (Doc. 44), is **GRANTED**. Plaintiff's claim for violation of procedural due process is **DISMISSED**. The trial scheduled to begin on December 15, 2014 is **CANCELLED**. The Clerk is directed to close the case. A separate order shall issue.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Date: November 6, 2014**

O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2013 MEMORANDA\13-0097-03.wpd